UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN R. MARSHALL and THE JOHN MARSHALL IRREVOCABLE TRUST *through trustee Michael A. Marshall*, <br><br> Plaintiffs, <br><br> v. <br><br> AMERIPRISE FINANCIAL SERVICES, <br><br> Defendant. | No. 2:24-cv-00112-DJC-AC <br><br><br> ORDER |

Before the Court is Defendant's Motion to Compel Arbitration.  Under the unique facts of this case, the arbitration agreement is unenforceable as to the individual Plaintiff John Marshall.  Due to the existing broker-dealer relationship between Plaintiff and Defendant's agent, and the agent's knowledge that Plaintiff was dyslexic, the agent had a fiduciary duty to orally disclose the arbitration agreement to Plaintiff but failed to do so, rendering the agreement void in the execution.  Since the Trustee had no such prior relationship with Defendant or the agent, however, the arbitration agreement is valid as to the Trust, although the Court will strike an unconscionable provision before ordering the Trust Plaintiff to arbitration.

////

////

1

I.  **Background**

Plaintiffs John R. Marshall and the John Marshall Irrevocable Trust ("Trust"), by and through its Trustee Michael Marshall, bring the present suit against Defendant Ameriprise Financial Services ("Ameriprise") for fraudulent and negligent misrepresentation, churning, and breach of fiduciary duty related to several of Plaintiffs' investments.  (*See generally* Compl. (ECF No. 1).)  Specifically, Plaintiffs allege that Plaintiff J. Marshall's long time financial adviser and broker, Kambiz Ghazanfari, an agent of Defendant, persuaded J. Marshall to invest a substantial amount of his assets into variable annuities based on misrepresentations about the nature of the investments, and added income riders without J. Marshall's knowledge. (*Id.* ¶¶ 7–13, 18–20.)  In 2017, J. Marshall transferred the annuities to the John Marshall Irrevocable Trust and named his brother M. Marshall as Trustee.  (*Id.* ¶¶ 15–17.)  As part of investing in the annuities and creating the Trust, both Plaintiffs signed multiple agreements with Ameriprise which included agreements to arbitrate claims related to the accounts and the agreements and contained a choice of law provision designating Minnesota law as the applicable law.  (MTD at 1–6.)

In December 2020, Mr. Ghazanfari passed away and a different Ameriprise representative, Cable Doria, was assigned to J. Marshall's and the Trust's accounts. (Compl. ¶¶ 21–22.)  Mr. Doria allegedly told Plaintiffs about the true nature of the annuities and said they were not good investments for Plaintiffs. (*Id.*)  Thereafter Plaintiffs removed their assets from Ameriprise, save for one annuity owned by the Trust which cannot yet be transferred without incurring a significant penalty.  (*Id.* ¶ 24.) The Trust seeks to have the contract for this annuity rescinded as part of this action. (*Id.* ¶¶ 77–79.)

Defendants assert that each of the accounts at issue are subject to arbitration and seeks to compel arbitration through the present Motion. (Motion to Compel ("MTC") (ECF No. 5).)  Plaintiffs filed an Opposition and Defendants replied.  (Opp'n (ECF No. 7); Reply (ECF No. 8).)  Upon the Court's own Motion, the parties filed

supplemental briefing. (ECF Nos. 10 and 11.) The Court held oral argument on the Motion on May 9, 2024 with Melinda Jane Steuer appearing for Plaintiffs and Craig Andrew Tomlins appearing for Defendant, after which the Court took the matter under submission.

**II.  Legal Standard for Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") governs arbitration agreements. 9 U.S.C. § 2. The FAA affords parties the right to obtain an order directing that arbitration proceed in the manner provided for in the agreement. 9 U.S.C. § 4. To decide on a motion to compel arbitration, the court must determine: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016). Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011). If a valid arbitration agreement encompassing the dispute exists, arbitration is mandatory. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); 9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .").

However, parties may use general contract defenses to invalidate an agreement to arbitrate. *See AT&T Mobility LLC*, 563 U.S. at 339. "[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) (alteration omitted)). Thus, a court should order arbitration of a dispute only where satisfied that neither the agreement's formation nor enforceability is at issue. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010). "Where a party contests either or both matters, 'the court' must resolve the disagreement." *Id.*

1  The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of a valid agreement to arbitrate.  *See Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).  In resolving a motion to compel arbitration, "[t]he summary judgment standard [of Federal Rule of Civil Procedure 56] is appropriate because the district court's order compelling arbitration 'is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'"  *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)).  "The party opposing arbitration receives the benefit of any reasonable doubts and the court draws reasonable inferences in that party's favor, and only when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration."  *Smith v. H.F.D. No. 55, Inc.*, No. 2:15-cv-01293-KJM-KJN, 2016 WL 881134, at *4 (E.D. Cal. Mar. 8, 2016).

**III.  Discussion**

While the parties agree that there are arbitration agreements signed by Plaintiffs would otherwise govern the claims at issue, Plaintiffs assert that the agreements are not enforceable for two reasons.  First, Plaintiffs argue that Mr. Ghazanfari breached his fiduciary duty to Plaintiffs by failing to inform them of the arbitration agreements which constitutes constructive fraud in the execution, and second, Plaintiffs argue that the arbitration agreements are unconscionable.

**A.  Constructive Fraud in the Execution**

**i.  Choice of law for fiduciary duty**

As an initial matter, the Parties dispute whether California or Minnesota substantive law applies.  "Federal courts sitting in diversity must apply 'the forum state's choice of law rules to determine the controlling substantive law.'"  *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005).  California employs different choice of law tests depending on whether there is a contractual choice of law

4

provision which applies to the claims or not. The *Nedlloyd* test applies when there is a contractual choice of law and the claim falls within the scope of that agreement, whereas the "governmental interest" test applies where there is no choice of law provision encompassing the claim but one party asserts a different state's law is nevertheless applicable. *Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 919 (2001).

    Here, the agreements contain a choice of law provision that requires the application of Minnesota law to disputes about the agreements and the brokerage accounts. (*See, e.g.*, Mot. Ex. A, at 11.) However, the choice of law provision does not govern which state's fiduciary laws Mr. Ghazanfari operated under *before* the agreements were signed. Mr. Ghazanfari allegedly owed a fiduciary duty which preexisted the agreements, and the parties agreed to the choice of law provision only after Mr. Ghazanfari allegedly breached his fiduciary duty. *Compare to Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 469 (1992) (finding that the breach of fiduciary duty claim was within the scope of the choice of law where the contract *gave rise to* the fiduciary duty); *see also Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) ("Claims arising in tort are not ordinarily controlled by a contractual choice of law provision. [Citation]. Rather, they are decided according to the law of the forum state." (quoting *Consolidated Data Terminals v. Applied Digital Data Systems,* 708 F.2d 385, 390 n. 3 (9th Cir.1983))). Accordingly, the governmental interest test will apply with respect to the fiduciary duty owed by Mr. Ghazanfari.

    "[G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event [that party] must demonstrate that the latter rule of decision will further the interest of the foreign state. . . . " *Hurtado v. Superior Ct.*, 11 Cal. 3d 574, 581 (1974). Under the governmental interest test, first, the court must determine if the foreign law "materially differs" from the forum law; next the court must determine if the foreign state has an interest in applying its law; and finally, only if the first two steps are satisfied, the court must

5

"select the law of the state whose interests would be 'more impaired' if its law were not applied." *Washington Mut. Bank, FA*, 24 Cal. 4th at 920.

Applying the governmental interest test here, the interests of California prevail. Under California law, "[i]t is a 'long-settled rule' that a stockbroker owes a fiduciary duty to his or her customer" in every broker-customer relationship. *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 245 (2007); *see also Duffy v. Cavalier*, 215 Cal. App. 3d 1517, 1535 (1989). However, in Minnesota, there is no fiduciary duty owed by a broker unless the parties enter into a special agreement to that effect. *See Rude v. Larson*, 296 Minn. 518, 207 N. W. 2d 709 (1973). Plaintiffs had no special agreement with Mr. Ghazanfari that would satisfy Minnesota's requirement, and as such, the laws "materially differ." The only connection that Minnesota has to the case is that Defendant is headquartered in that state, and therefore may have an interest in regulating the conduct of financial institutions headquartered there. The Ninth Circuit regards this sort of interest as "minimal." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010). California, however, has a much greater interest in enforcing its fiduciary duty laws in the instant case. Fiduciary duties are ultimately imposed for the protection of person to whom the duty is owed, and in this case, the duty would be owed to the Plaintiffs who are both residents of California. Therefore, California has an interest in protecting Plaintiffs. Moreover, California also has a significant interest in regulating the conduct of financial professionals operating in its state. The conduct at issue here occurred in California through a financial professional employed by Defendant in California. Application of Minnesota law would subvert California's strong interest in imposing a fiduciary duty in this case. Therefore, California law is controlling with respect to whether Defendant, through Mr. Ghazanfari, breached its fiduciary duty in the execution of the agreements.

### ii. Fiduciary duty and breach of duty

An arbitration agreement is "void for fraud in the execution if the promisor was deceived as to the nature of his or her act and did not know what he or she was

signing or never intended to enter into" the agreement.  *Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP*, 219 Cal. App. 4th 1299, 1308 (2013), *as modified on denial of reh'g* (Oct. 23, 2013).  "Generally, it is *not reasonable* to fail to read a contract; this is true even if the plaintiff relied on the defendant's assertion that it was not necessary to read the contract.  Reasonable diligence requires a party to read a contract before signing it."  *Brown v. Wells Fargo Bank, N.A.*, 168 Cal. App. 4th 938, 960 (2008) (emphasis in original) (cleaned up).  It is only where there is a fiduciary relationship which justifies reliance on the fiduciary's representations that the party is excused from the otherwise ordinary diligence of reading an agreement before signing.  Where there is a "fiduciary relationship with the plaintiff which requires the defendant to explain the terms of a contract between them . . . the defendant fiduciary's failure to perform its duty would constitute constructive fraud . . . and constructive fraud in the execution would be established."  *Brown*, 168 Cal. App. 4th at 959; *accord Ashburn v. AIG Fin. Advisors, Inc.*, 234 Cal. App. 4th 79, 102 (2015).

"It is a 'long-settled rule' [in California law] that a stockbroker owes a fiduciary duty to his or her customer."  *Apollo*, 158 Cal. App. 4th at 245 (quoting (*Brown v. California Pension Administrators & Consultants, Inc.*, 45 Cal. App. 4th 333, 348 (1996)).  "The question is not whether there is a fiduciary duty, which there is in every broker-customer relationship; rather, it is the scope or extent of the fiduciary obligation, which depends on the facts of the case."  *Duffy*, 215 Cal. App. 3d at 1535.  "Indeed, even when a stockbroker acts on behalf of a customer, the scope of the broker's fiduciary duty depends on the nature of the broker/customer relationship."  *Apollo*, 158 Cal. App. 4th at 245; *see also Petersen v. Sec. Settlement Corp.*, 226 Cal. App. 3d 1445, 1456 (1991) ("[T]he scope of a broker's duty to disclose is delimited by the nature of the broker's relationship with the customer.")

The scope of a stockbroker's fiduciary duty is directly tied to the extent of the broker's agency over the client's accounts, the comparative vulnerability of the client, and the extent of trust in the relationship.  *See Duffy*, 215 Cal. App. 3d at 1529, 1534–

36; *Brown*, 168 Cal. App. 4th at 960.  Where a customer is more vulnerable because of, for example, mental disability or advanced age, the broker has a heightened duty to that customer.  *Brown*, 168 Cal. App. 4th at 960.  Similarly, the level of trust and control that the customer places in the broker, of which the broker is aware and accepts, imposes a heightened duty.  *Lynch*, 18 Cal. App. 4th at 809 (finding that defendant owed a fiduciary duty to plaintiff after developing a close friendship with the plaintiff over the course of a year and encouraged the plaintiff to rely on and trust him).  For example, in *Brown v. Wells Fargo*, the court found that the broker had developed a fiduciary relationship with an elderly and frail couple prior to entering into a brokerage agreement because the broker knew of the couple's declining health and vision, had been their relationship manager at the bank for six months prior to entering the agreement, worked at the couple's home office on a regular basis, had access to and managed the couple's financial paperwork, and provided the couple with investment advice.  168 Cal. App. 4th at 960.  Specifically, the court held that the broker had a duty to disclose and explain material terms of their contract, including the existence of an arbitration agreement.  *Id*.

Here, Plaintiff J. Marshall alleges a longstanding relationship of trust with Mr. Ghazanfari which gave rise to a similar duty to disclose and explain the material terms of the agreements.  Significantly, Plaintiff J. Marshall first opened an investment account with Mr. Ghazanfari (who was at the time working for an affiliate of Defendant)[1] and began relying on Mr. Ghazanfari's investment advice nearly 10 years

---

[1] Defendant asserts that Mr. Ghazanfari did not officially work for Ameriprise until 2009, and therefore the relationship Plaintiff J. Marshall had with Defendant is not as longstanding.  However, courts generally look to the nature of the relationship with the financial adviser personally.  *See, e.g.*, *Twomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal. App. 2d 690, 713–14 (1968) (discussing the nature of the relationship between the individual adviser and the plaintiff); *Brown*, 168 Cal. App. 4th at 160 (same); *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 244, 247 (2007) (granting leave to plead additional facts about the pre-existing relationship between the plaintiff and the individual financial adviser).  Even if the Court only looked at the relationship since Mr. Ghazanfari's official association with Defendant in 2009, the two had an ongoing relationship of trust for about one year prior to signing the first agreement at issue.  In *Brown*, the sixth-month relationship between the Plaintiffs and the financial adviser was sufficient to establish a fiduciary duty.  *Brown*, 168 Cal. App. 4th at 160.

prior to signing the first of the agreements at issue. (Compl. ¶ 8; Opp'n at 16–17.) During that time, Plaintiff J. Marshall alleges that he followed all of Mr. Ghazanfari's advice. And in what are likely fairly unique circumstances, Plaintiff J. Marshall is also dyslexic and has trouble reading documents. He would remind Mr. Ghazanfari of his dyslexia and tell Mr. Ghazanfari he was relying on him to explain the forms he was signing instead of reading them, and Mr. Ghazanfari undertook the responsibility of explaining the forms.[2] (Decl. of J. Marshall (ECF No. 7-2) at 11.) Because of the longstanding relationship, the control Mr. Ghazanfari had over Plaintiff's accounts, and most significantly Mr. Ghazanfari's acceptance of the responsibility to explain the agreements, Mr. Ghazanfari had a duty to disclose the material terms of the agreements he advised Plaintiff to enter. Defendant does not contest Plaintiff J. Marshall's allegation that Mr. Ghazanfari did not disclose the arbitration agreement to him. That failure to disclose was a breach of Mr. Ghazanfari's fiduciary duty and constitutes fraud in the execution, making the arbitration agreement unenforceable against Plaintiff J. Marshall.

The relationship between Mr. Ghazanfari and the Trustee Plaintiff M. Marshall, however, was materially different and did not give rise to a fiduciary duty toward M. Marshall. There are no allegations that M. Marshall had any prior relationship with Mr. Ghazanfari before entering into the agreement. In fact, M. Marshall attested that he had never spoken with or met Mr. Ghazanfari. (Decl. of M. Marshall (ECF No. 7-3) ¶ 5.) Instead, Plaintiffs attempt to transpose Plaintiff J. Marshall's relationship with Mr. Ghazanfari to Plaintiff M. Marshall. M. Marshall asserts that he "signed the forms without reading them because [J.] Marshall had asked me to do whatever Mr. Ghazanfari advised based on the trust he had in him." (*Id.* ¶ 4.)

---

[2] While the Court is sympathetic to the fact that Defendant is unable to test the veracity of the affidavit due to the fact that Mr. Ghazanfari is deceased, the Court must, absent contrary evidence, accept the sworn statements of the Plaintiff. Moreover, even if Plaintiff *could have* read the documents, having told Mr. Ghazanfari that he would rely on him to read the documents for him and summarize their contents, Mr. Ghazanfari was, as a fiduciary, required to do so.

Although Plaintiff J. Marshall is the settlor of the Trust in question, a trust is a separate entity which is represented by the trustee.  Restatement (Third) of Trusts § 2 (2003).  It is the trustee (M. Marshall) that holds legal title to a trust, not the settlor (J. Marshall).  *Id.* § 3.  In the case of an irrevocable trust, like here, the settlor has no "rights, liabilities or powers with regard to the trust administration." *Status of settlor after trust creation*, Bogert's The Law of Trusts and Trustees § 42.  While Mr. Ghazanfari would have had a fiduciary duty that extended to advising Plaintiff J. Marshall about creating a Trust or making contributions to the Trust, Plaintiffs do not provide support  for the argument that this duty extends to a third-party Trustee.  As there was clearly no prior relationship between Plaintiff M. Marshall and Mr. Ghazanfari, it would be unreasonable to impose a fiduciary duty on Mr. Ghazanfari to disclose the terms of the agreements.  Similarly, it was unreasonable for M. Marshall to have chosen to not read the forms before signing based solely on the relationship that existed between J. Marshall and Mr. Ghazanfari.  *Rowland v. PaineWebber Inc.*, 4 Cal. App. 4th 279, 286 (1992) ("Reasonable diligence requires the reading of a contract before signing it.  A party cannot use his own lack of diligence to avoid an arbitration agreement.").  The arbitration agreement was therefore validly formed with the Trust through M. Marshall, Trustee.

### B. Unconscionability

#### i. Choice of law for unconscionability

Unlike the fiduciary duty, the contractual choice of law necessarily covers the arbitration provisions because the choice of law applies to "the agreement and its enforcement." (*See, e.g.*, Mot. Ex. A, at 11.)  The *Nedlloyd* test regarding choice of law therefore applies. Under *Nedlloyd*, "the court first determines either (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. [Citation.] If neither of these tests is met, the court need not enforce the parties' choice of law; however, if either test is met, the court must next determine whether the chosen

state's law is contrary to a fundamental policy of California" and whether California has a "materially greater interest" in the issue. *Gramercy Inv. Tr. v. Lakemont Homes Nevada, Inc.*, 198 Cal. App. 4th 903, 909 (2011) (citing *Nedlloyd*, 3 Cal. 4th at 465-466). Defendant has both a substantial relationship with Minnesota and a reasonable basis for selecting that state's law by virtue of being domiciled there. *See Sandler Partners, LLC v. Masergy Commc'ns, Inc.*, No. CV 19-6841-JFW-MAA, 2019 WL 9047103, at *3 (C.D. Cal. Nov. 25, 2019); *Nedlloyd*, 3 Cal. 4th at 467. The Court will accordingly assess only the final two factors.

Applying Minnesota choice of law in this instance would conflict with fundamental California policy because Minnesota does not recognize the same standards of unconscionability. For example, under Minnesota law, a contract will only be considered a procedurally unconscionable contract of adhesion if the party "had no meaningful choice" but to sign the contract, meaning there was no alternative for the goods or services, or the goods or services were a necessity. *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 924–25 (Minn. 1982); *BAM Navigation, LLC v. Wells Fargo & Co.*, No. 20-cv-1345, 2021 WL 533692, at *4–5 (D. Minn. Feb 12, 2021) (finding the arbitration agreement was not procedurally unconscionable because the plaintiff could have opted to not open an account). California does not have such a requirement, but instead defines a contract of adhesion as one which is "standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126, 447 (2019) (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016)). Because Plaintiffs do not argue that they had no alternative to opening an account, applying Minnesota law would deprive Plaintiffs of the ability to challenge the unconscionability of the agreements, and would militate toward enforcement of an agreement that may otherwise be unenforceable under California law. This presents a significant conflict with the fundamental policy of California. *See OTO, L.L.C.*, 8 Cal. 5th at 130 (explaining the strong public policy underlying the unconscionability doctrine).

As with its fiduciary duty laws, California has a substantially greater interest in applying its laws of unconscionability than Minnesota. Where the only connection to the chosen state is that the defendant is headquartered in that state, the chosen state "has little to no interest in the application of its law of . . . unconscionability to Plaintiffs' challenge to the validity and enforceability of the [arbitration] agreements" when compared to California's "substantial interest in applying its law of . . . unconscionability" to agreements formed by California residents in California. *Pokorny*, 601 F.3d at 995. As in *Pokorny*, neither the Plaintiffs nor the events in questions have any connection to the chosen state; rather the singular connection is that Defendant is headquartered there. While Minnesota may have an interest in regulating the contract law for a company headquarter in its state, the Ninth Circuit considers such an interest to be minimal. *See id.* Defendant has failed to provide any further interest Minnesota may have in applying its laws to this case. In contrast, the California unconscionability doctrine was designed to protect parties with weak bargaining positions, such as individuals like Plaintiffs, from unreasonable terms imposed by more powerful parties, including larger corporations like Defendant. *OTO, L.L.C.*, 8 Cal. 5th at 130. Imposing Minnesota law would "eliminate [Plaintiffs'] ability to argue unconscionability using California public policy as a measuring stick for enforceability" and frustrate California's interest in protecting its residents from unreasonable contracts entered into within its borders. *See Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 257 (2015). Therefore, California has a "materially greater interest" than Minnesota in applying its law of unconscionability and the Court will apply California law.

### ii. Application of California unconscionability law

"Under California law, an arbitration agreement, like any other contractual clause, is unenforceable if it is both procedurally and substantively unconscionable." *Pokorny*, 601 F.3d at 996. In order for an arbitration agreement to be unconscionable, there must be both procedural and substantive unconscionability, though "they need

not be present to the same degree." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id*. The burden of proving unconscionability rests on the party asserting that the provision is unconscionable. *OTO, L.L.C.*, 8 Cal. 5th at 126.

<u>Procedural unconscionability.</u>  A contract is procedurally unconscionable if it is a contract of adhesion, that is, one which is "standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" *Id*. (quoting *Baltazar*, 62 Cal. 4th at 1245). In addition, there must be "circumstances of the contract's formation [which] created such oppression or surprise that closer scrutiny of its overall fairness is required." *Id*. "The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 (2015).

As to the Trust, Plaintiffs argue that the arbitration agreement is procedurally unconscionable because it is a contract of adhesion. While they posit additional arguments about how the contract terms were surprising to Plaintiff J. Marshall because of his dyslexia and expectation that Mr. Ghazanfari would have told him about an arbitration provision, these arguments are inapplicable to M. Marshall. However, "[b]y itself, an adhesion contract may present a low or modest degree of procedural unconscionability . . . ." *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643, 660 (2022). Accordingly, because Plaintiffs have shown a lower degree of procedural unconscionability, there must be a higher level of substantive

unconscionability.

<u>Substantive unconscionability.</u>  "Substantively unconscionable terms may 'generally be described as unfairly one-sided.'"  *Id.* at 662 (quoting *Fitz v. NCR Corp.* 118 Cal.App.4th 702, 713 (2004)).  "[T]he unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party.'"  *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013) (quoting *Schnuerle v. Insight Communications Co.*, 376 S.W. 3d 561, 575 (Ky. 2012) and 8 Williston on Contracts (4th ed. 2010) § 18.10, p. 91).  Plaintiffs argue the arbitration agreements are unfairly one-sided, and therefore substantively unconscionable, because the agreements are not mutually binding, require Plaintiffs to travel a significant distance, and because the agreements would limit remedies which would otherwise be available to Plaintiffs in court.

Plaintiffs' attempt to argue that the agreements are only binding on Plaintiffs and not the Defendant is inconsistent with the terms and structure of the agreements.  For example, the *Amerprise ONE* Financial Account *Ameriprise* Brokerage Non-Qualified Account Application[3] is signed by both Plaintiffs and by Mr. Ghazanfari, acting as the representative of Defendant.  This signed agreement incorporates by reference the Ameriprise Brokerage Client Agreement, stating:

> You acknowledge that you have received and read the Ameriprise Brokerage Client Agreement ("Agreement"), which is hereby incorporated by reference, and agree to abide by the terms and conditions as currently in effect or as they may be amended from time to time. You hereby consent to all these terms and conditions with full knowledge and understanding of the information contained in the Agreement.  This brokerage account is governed by a predispute arbitration clause which is found in Section 25, Page 3 of the Agreement.  You acknowledge receipt of the predispute arbitration clause.

(Mot. Ex. H, at 9).  The Brokerage Client Agreement that was incorporated into the Application in turn specifies that as part of the arbitration agreement "[a]ll parties to this agreement are giving up the right to sue each other in court . . . ."  (Mot. Ex. I, at 3.)

---

[3] This is the agreement in which J. Marshall transferred his annuities to the Trust.

14

Each of the other arbitration agreements similarly incorporate the corresponding arbitration agreements by reference, (Mot. Ex. A, at 7; Ex. B, at 3; Ex. D, at 2–3; Ex. F, at 5; Ex. J, at 8), and each of the arbitration agreements state that both parties are giving up the right to sue, (Mot. Ex. A, at 12; Ex. C, at 3; Ex. E, at 3; Ex. G, at 9; Ex. K, at 4). Each of these agreements is signed by Mr. Ghazanfari as signatory for Defendant and at least one Plaintiff. As the agreements are signed by both parties, incorporate the arbitration provision, and state that each party is giving up its right to sue, the Court finds that the agreements are mutually binding and require both Plaintiffs and Defendant to submit to arbitration. They are not substantively unconscionable in this respect.

Plaintiffs next argue that the arbitration agreements contain a substantively unconscionable venue provision which would require Plaintiffs to arbitrate in Minnesota. *See Ajamian*, 203 Cal. App. 4th at 797–98 (requiring California resident to arbitrate in New York City was substantively unconscionable). The agreements in Exhibits E, G, I and K provide that "venue and personal jurisdiction is proper in Minneapolis, Minnesota." (Mot. Ex. E, at 4; Ex. G, at 9; Ex. I, at 4; Ex., K at 4.) Though Plaintiffs interpret this to be a mandatory venue provision, this clause uses language which makes the venue "permissive rather than mandatory." *N. California Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1036 (9th Cir. 1995). "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." *Id*. Here, the parties are agreeing to submit to jurisdiction in Minnesota, but the clause does not contemplate that venue would *only* be proper in Minnesota, or that the parties *must* arbitrate in Minnesota. Indeed, Counsel for Defendant confirmed this understanding at oral argument.[4] While the Parties could initiate an action in Minnesota, Plaintiffs are not required to travel in order to initiate their action. It is only when Plaintiffs are required to endure the cost

---

[4] If this representation ultimately proves to be incorrect, Plaintiffs may file a motion for reconsideration with this Court.

and inconvenience of travelling in order to pursue arbitration that the agreement is seen as being substantively unconscionable. *See Bolter v. Superior Ct.*, 87 Cal. App. 4th 900, 910 (2001), *as modified on denial of reh'g* (Mar. 30, 2001). Therefore, this permissive venue provision is not unconscionable.

Finally, Plaintiffs assert that the arbitration agreements unconscionably limit the available recovery through the "Limitation of Liability" provisions located elsewhere in the agreements. Exhibits E, I and K provide that recovery "will not exceed the amount you originally paid for the service." (Mot. Ex. E, at 4; Ex. I, at 4; Ex. K, at 4) Although an arbitration is usually considered "only as a specialized choice-of-forum provision which identifies the 'situs of the suit'" the agreement may also provide "the specific set of procedures governing its resolution." *Johnson v. Hubbard Broad., Inc.*, 940 F. Supp. 1447, 1453 (D. Minn. 1996). As in *Ajamian v. CantorCO2e, L.P.*, the arbitration agreements here incorporate the limitation on liability provision by stating that controversies "shall be determined by arbitration in accordance with the terms of this Agreement." (Mot. Ex. E, at 3; Ex. I, at 4; Ex. K, at 4); 203 Cal. App. 4th 771, 803 (2012) (arbitration clause which "required the arbitrators to 'make their award in accordance with and based upon all provisions of this Agreement,' thereby incorporate[ed] the unlawful attorney fees provision."); *Ting v. AT & T*, 182 F. Supp. 2d 902, 926 (N.D. Cal. 2002), *aff'd in part, rev'd in part sub nom. on other grounds in Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) (finding that the clause limiting liability was a part of the arbitration provision where it stated that "the arbitrator shall be bound by and strictly enforce the terms of this Agreement"). Because Plaintiffs would ordinarily be entitled to additional damages for their claims, the agreement would deprive Plaintiffs of remedies otherwise available to them in court. Most of the cases cited by Plaintiff have held that limitations on *statutory* damages are substantively unconscionable, but a few have determined that one-sided limitations on recovery for *other* claims, including common law and contract claims, also render an agreement substantively unconscionable. *See, e.g.*, *Armendariz*, 24 Cal. 4th at 103 (finding that the limitation

16

on "ordinary contract damages" was unconsciounably because it was one-sided in addition to finding the limitation on statutory FEHA damages unconscionable); *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 825-826 (2010) (arbitration agreement limiting recovery to the amount paid by the plaintiff was unconscionable where the was no reciprocal limitation on defendant's damages); *cf. Ting*, 182 F. Supp. 2d at 933–34 (holding that limitation of non-statutory damages was unconscionable where the costs of arbitration would be such that the plaintiff could not effectively vindicate their rights with a limited recovery).  Here, because the provisions only limit the recovery that Plaintiff may seek, and provide no reciprocal limitation on Defendant, the provisions are unfairly one-sided and therefore unconscionable.

An arbitration agreement which contains unconscionable terms my still be enforced if the terms are severable, and the decision whether to sever the objectionable clauses or refuse to compel arbitration is within the trial court's exercise of discretion.  *Armendariz*, 24 Cal.4th at 124.  "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced.  If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Id*.  "An arbitration agreement can be considered permeated by unconscionability if it 'contains more than one unlawful provision . . . . Such multiple defects indicate a systematic effort to impose arbitration ... not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage.'" *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1149, (2012) (*quoting Lhotka*, 181 Cal. App. 4th at 826); *accord Armendariz*, 24 Cal. 4th at 124. Because the agreements contain only one unconscionable provision and otherwise have minimal procedural unconscionability, and because each of the agreements at issue contain a severability clause, the Court will strike the liability limitation provisions and compel arbitration rather than refuse to enforce the agreement.  *See, e.g., Singh v. Batteries Plus, L.L.C.*, Case No. 2:24-cv-2132525-KJM-DB, 2024 WL 2132525 at *11

(E.D. Cal. May 13, 2024) (severing a restriction on damages from an arbitration agreement).

After striking the unconscionable limitation on recovery present in the arbitration agreements corresponding to Exhibits E, I, and K, the Court finds that the arbitration agreements are not unconscionable and therefore enforceable.  However, because the arbitration agreements are void as to J. Marshall, the Court GRANTS IN PART the Motion to Compel Arbitration only as to the Trust.

### D. Stay of Proceedings

Where claims are subject to arbitration, federal courts must stay the action until the arbitration is resolved.  *See Smith v. Spizzirri*, No. 22-1218, 2024 WL 2193872, at *4 (U.S. May 16, 2024)*; 9 U.S.C. § 3.  Because the Trust is subject to arbitration, the Court will hereby stay the claims brought by J. Marshall until resolution of the arbitration.

### IV. Conclusion

For the above reasons, IT IS HEREBY ORDERED that Defendant's Motion to Compel Arbitration is GRANTED IN PART and the action is STAYED pending resolution of the arbitration.

Dated:  May 31, 2024                    /s/ Daniel J. Calabretta
                                        THE HONORABLE DANIEL J. CALABRETTA
                                        UNITED STATES DISTRICT JUDGE